**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

SHIVA STEIN,                                         :
                                                     :
                    Plaintiff,                       :   Civil Action No. 23-cv-1947
                                                     :
v.                                                   :   **COMPLAINT FOR VIOLATIONS OF**
                                                     :   **SECTIONS 14(a) AND 20(a) OF THE**
ARGO GROUP INTERNATIONAL                             :   **SECURITIES EXCHANGE ACT OF**
HOLDINGS, LTD., THOMAS A.                            :   **1934**
BRADLEY, BERNARD C. BAILEY,                          :
DYMPHNA A. LEHANE, SAMUEL LISS,                      :   **JURY TRIAL DEMANDED**
CAROL A. MCFATE, and AL-NOOR                         :
RAMJI,                                               :
                                                     :
                    Defendants.                      :
------------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Argo Group International Holdings,

Ltd. ("Argo Group or the "Company") and the members Argo Group's board of directors (the

"Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed acquisition of Argo Group by affiliates of Brookfield

Reinsurance Ltd. ("Brookfield").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 6, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby BNRE Bermuda Merger Sub Ltd. ("Merger Sub"), an indirect wholly-owned subsidiary of Brookfield, will merge with and into Argo Group with Argo Group becoming an indirect wholly-owned subsidiary of Brookfield (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 8, 2023 (the "Merger Agreement"), each Argo Group stockholder will receive $30.00 in cash (the "Merger Consideration") for each Argo Group share owned.

3.      As discussed below, Defendants have asked Argo Group's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Argo Group's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Argo Group stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Thomas A. Bradley has served as a member of the Board since 2018 and is the Chairman of the Board and the Chief Executive Officer of the Company.

11.      Individual Defendant Bernard C. Bailey has served as a member of the Board since 2020 and is the Lead Independent Director.

12.      Individual Defendant Dymphna A. Lehane has served as a member of the Board since 2017.

13.      Individual Defendant Samuel Liss has served as a member of the Board since 2019.

14.      Individual Defendant Carol A. McFate has served as a member of the Board since 2017.

15.     Individual Defendant Al-Noor Ramji has served as a member of the Board since 2017.

16.     Defendant Argo Group is a company incorporated under the laws of Bermuda and maintains its principal offices at Wellesley House, 90 Pitts Bay Road, Pembroke HM 08, Bermuda. The Company's stock trades on the New York Stock Exchange under the symbol "ARGO."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.     **The Proposed Transaction**

19.     Argo Group underwrites specialty insurance and reinsurance products in the property and casualty markets. The Company operates in two segments, U.S. Operations and International Operations. It offers primary and excess specialty casualty, general liability, commercial multi-peril, and workers compensation, as well as product, environmental, and auto liability insurance products; management liability, transaction liability, and errors and omissions liability insurance; primary and excess property, inland marine, and auto physical damage insurance; and surety, animal mortality, and ocean marine insurance products. The Company also provides directors and officers liability, errors and omissions liability, and employment practices liability insurance; international casualty and motor treaties insurance; professional indemnity and medical malpractice insurance; direct and facultative excess insurance, North American and international binders, and residential collateral protection for lending institutions; and personal accident, aviation, cargo, yachts, and onshore and offshore marine insurance products. It markets

its products through wholesale and retail agents, managing general agents, brokers, and third-party

intermediaries. The Company was founded in 1948 and is headquartered in Pembroke, Bermuda.

20.    On February 8, 2023, the Company announced the Proposed Transaction:

**BROOKFIELD, NEWS, FEBRUARY 8, 2023** – Brookfield Reinsurance (NYSE, TSX:BNRE) and Argo Group International Holdings, Ltd. ("Argo") (NYSE: ARGO) today announced they have entered into a definitive merger agreement whereby Brookfield Reinsurance will acquire Argo in an all-cash transaction valued at approximately $1.1 billion.

Sachin Shah, Chief Executive Officer of Brookfield Reinsurance, said, "The acquisition of Argo represents another milestone in the continued expansion of our insurance solutions business. Argo's leading U.S. specialty platform adds a foundational piece to our expanding U.S. P&C operations. We look forward to partnering with the Argo team to support the growth of its core businesses, build on its strong franchise, and deliver value for policyholders."

Thomas A. Bradley, Argo's Executive Chairman and Chief Executive Officer, said, "This transaction brings a successful conclusion to Argo's strategic alternatives review process and represents the best path forward for Argo, our employees and policyholders while also maximizing value for our shareholders. By joining Brookfield Reinsurance, Argo will continue to serve our brokers with greater financial strength and opportunities to grow as a U.S.-focused specialty insurer."

As part of the agreement, each issued and outstanding Argo common share will be converted into the right to receive $30.00 in cash at closing of the merger, funded by existing cash on hand and liquidity available to Brookfield Reinsurance. The merger consideration per Argo common share represents a 6.7% premium to Argo's closing share price on February 7, 2023, and a 48.7% premium over Argo's closing share price on September 7, 2022, the last full trading day prior to Argo announcing the sale of Argo Underwriting Agency Limited and its Lloyd's Syndicate 1200 and the continuation of its strategic alternatives review process. The transaction is not subject to any financing condition or contingency.

Each of Brookfield Reinsurance's and Argo's boards of directors unanimously approved the merger agreement. The merger is expected to close in the second half of 2023, subject to approval by Argo shareholders and other closing conditions customary for a

transaction of this type, including receipt of insurance regulatory approvals in relevant jurisdictions and the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

In connection with the execution of the merger agreement, Voce Capital Management LLC entered into a voting and support agreement whereby Voce Capital Management LLC agreed to vote all of the common shares held by it in favor of the merger and take certain other actions, subject to the terms and conditions of the voting and support agreement.

Under the terms of the merger agreement, Argo has agreed to suspend the payment of dividends on its common shares through the closing of the transaction.

For further information regarding the definitive merger agreement, please see Argo's current report on Form 8-K, which will be filed with the U.S. Securities and Exchange Commission (the "SEC") and will contain a summary of the material terms and conditions of the merger agreement, as well as a copy of the merger agreement.

**Advisors**
Debevoise & Plimpton LLP is serving as legal advisor to Brookfield Reinsurance on this transaction.

Goldman Sachs & Co. LLC is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to Argo on this transaction.

\* \* \*

21.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Argo Group's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22.     On March 6, 2023, Argo Group filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's

stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The

Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any

material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections

14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial

projections by Argo Group management and relied upon by Goldman Sachs in its analyses. The

Proxy Statement discloses management-prepared financial projections for the Company which are

materially misleading. The Proxy Statement indicates that in connection with the rendering of its

fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company

Projections") and provided them to the Board and Goldman Sachs with forming a view about the

stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to

provide, certain information in the projections that Argo Group management provided to the Board

and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the

most highly-prized disclosures by investors. Investors can come up with their own estimates of

discount rates or [] market multiples. What they cannot hope to do is replicate management's inside

view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-

203 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement provides values for non-GAAP

(Generally Accepted Accounting Principles) financial metric: Return on Average Common

Equity, but fails to provide line items used to calculate this metrics or a reconciliation of the non-GAAP metrics to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

25.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28.     With respect to Goldman Sachs' *Illustrative Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the terminal values of the Company as of September 30, 2022; (ii) the inputs and assumptions underlying the P/BV multiples ranging from 0.60x to 1.10x; (iii) the inputs and assumptions underlying the discount rates ranging from 8.50% to 10.25%; and (iv) the Company's cost of equity and the certain company-specific inputs used to derive the estimated cost of equity.

29.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the range of theoretical future values per common share as of December 31, 2023 through December 31, 2025; (ii) the inputs and assumptions underlying the illustrative P/BV multiples ranging from 0.60x to 1.10x; (iii) the inputs and assumptions underlying the discount rate of 9.25%

30.     With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected by Goldman Sachs for the analysis.

31.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

35.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

36.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     The Individual Defendants acted as controlling persons of Argo Group within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Argo Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Argo Group, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Argo Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants

jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents,

employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result

of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 7, 2023                              **MELWANI & CHAN LLP**

                                        By:   */s/ Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)

13

1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*